# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EUGENE SEMCHESKI,** | : | **No. 3:16cv1592** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CUNNINGHAM LINDSEY U.S., INC.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is a motion for summary judgment filed by Defendant Cunningham Lindsey U.S., Inc., in this employment discrimination action. The matter has been fully briefed and is ripe for disposition.

## Background

Prior to initiating this lawsuit, plaintiff worked as an insurance adjuster for Defendant Cunningham Lindsey, U.S., Inc. (Doc. 22-30, Def. Stmt. of Mat. Facts ("SOF") ¶ 1).[1] He began his employment with the defendant in 2011, when the defendant acquired the loss adjusting unit of plaintiff's former employer, GAB Robbins. (<u>Id.</u>) In his capacity as an insurance adjuster, plaintiff was responsible for handling claims of damage to insured property by traveling to and inspecting the property, evaluating the cost of repair or replacement, and providing a report

_____

[1] For this brief factual background section, we will cite to the defendant's statement of material facts as to which no genuine issue remains to be tried.

to the insurance company. (Id. ¶ 3). At the time of the GAB Robbins acquisition, plaintiff was fifty-nine (59) years old. (Id. ¶ 2).

In 2011, the plaintiff generated the least revenue of the adjusters in his region. (Id. ¶ 12). His revenue generation continued to decline in 2012; his monthly average dropped approximately 23% from the previous year, falling below profitability guidelines. (Id. ¶ ¶ 14, 17). As a result, on August 1, 2012, the defendant reduced the plaintiff's salary from $57,501 to $43,000. (Id. ¶ 18).

On August 3, 2012, two days after plaintiff's compensation was reduced, plaintiff was involved in an automobile accident. (Id. ¶ 19). Due to injuries sustained in the accident, plaintiff took off several weeks of work to recover. (Id. ¶ 20). He returned to work on September 20, 2012, and informed the human resource director that he required certain accommodations as a result of knee problems. (Id. ¶ 21). Specifically, the plaintiff provided documentation indicating that he required light duty work in the form of a permanent restriction of less than two hours of driving per shift, and a maximum of one hour of ladder usage.[2] (Id. at 22). In response, the defendant agreed to honor the plaintiff's restrictions, noting that:

---

[2] In a major point of contention between the parties, plaintiff alleges that such restrictions had been in place since 2009, after he underwent knee replacement surgery, and that the request for accommodations in 2012 was just an update that the accommodations were still necessary. (Doc. 24, Pl.'s SOF ¶ 9).

> This is a temporary accommodation, *not* a permanent position. It was created to assist you while you are recovering. It is with the understanding that after each future doctor visits [sic] you will provide a medical update indicating either a release to perform the essential functions of your position, or information describing updated functional limitations, so that a determination can be made regarding continuation of the temporary accommodation.

(Id. ¶ 23) (emphasis in original).

Upon his return, plaintiff's assignments were reassessed to comply with his restrictions. (Id. ¶ 30). Approximately two-thirds of the claims that he was handling prior to his accident required him to drive more than his restrictions allowed. (Id.) Thus, plaintiff's workload significantly decreased. (Id.) Two months later, on November 20, 2012, the human resource director for the defendant contacted the plaintiff and informed him that the company could not continue to accommodate his medical restrictions. (Id. ¶ 31). The director informed the plaintiff that the defendant intended to place him on FMLA[3] and short-term disability leaves. (Id.)

Plaintiff contested this decision, and presented the defendant with a list of thirty-five insurance claims that arose in the preceding months which were within his driving restrictions that he alleges he could have been assigned. (Id. ¶ 32). The defendant disputes the accuracy of plaintiff's list.

Nevertheless, plaintiff remained on FMLA and short-term disability leaves for the remainder of 2012 through 2013. (Id. ¶ 45). In January 2014, plaintiff

---

[3] Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq.

exhausted his FMLA and short-term disability leaves. Upon the exhaustion, plaintiff's counsel confirmed to the defendant that plaintiff's necessary accommodations remained the same. (Id. ¶ 49). The defendant subsequently terminated plaintiff's employment. (Id.)

Based upon these facts, plaintiff filed a ten-count complaint on August 1, 2016. The complaint raises the following causes of action: Count I, discrimination on account of disability under the Americans With Disabilities Act (hereinafter "ADA"); Count II, failure to accommodate under the ADA; Count III, retaliation under the ADA; Count IV, age discrimination in contravention of the Age Discrimination in Employment Act (hereinafter "ADEA"); Count V, retaliation under the ADEA; Count VI, discrimination on account of disability under the Pennsylvania Human Relations Act (hereinafter "PHRA"); Count VII, failure to accommodate under the PHRA; Count VIII, retaliation under the PHRA; Count IX, age discrimination under the PHRA; and Count X, a second count of retaliation under the PHRA.

Upon completion of discovery, the defendant filed the instant motion for summary judgment. (Doc. 22). Plaintiff filed a brief in opposition on March 9, 2018, (Doc. 24), bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the ADA, 42 U.S.C. § 12101, et seq. and the ADEA, 29 U.S.C. § 621 et seq., the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted above, plaintiff's complaint raises several different causes of action, and the defendant seeks summary judgment on all counts. We will address the claims in turn.

**I. ADA Claims**

The ADA is one statutory scheme, but it provides more than one cause of action. Here, plaintiff has raised causes of action under the ADA for disability discrimination, failure to accommodate, and retaliation. The defendant moves for summary judgment on all three causes of action. We start our analysis with a review of plaintiff's disability discrimination claim.

**A. Disability Discrimination**

To state a claim for disability discrimination under the ADA, plaintiff must establish that: (1) he has a disability under the ADA; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he suffered an adverse employment action as a result of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.

For a plaintiff to defeat a motion for summary judgment when the defendant points to a legitimate, non-discriminatory reason for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992). If the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his prima facie case. Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122-24 (7th Cir. 1994); Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993). This burden-shifting framework is referred to as the "McDonnell Douglas test."

Here, the defendant disputes the first two elements of the plaintiff's prima facie case. First, the defendant argues that the plaintiff is not disabled within the meaning of the ADA. Second, the defendant argues that the plaintiff was not able to perform the essential functions of his job as an insurance adjuster, and the accommodations that he asked for were not reasonable in light of the company

circumstances. We first will address whether the plaintiff's knee injury qualifies him as disabled for the purposes of the ADA.

### 1. Qualifying Disability

To qualify as disabled under the ADA, plaintiffs must establish that (1) they have a physical or mental impairment that substantially limits one or more of their major life activities, (2) there is a record of such impairment, or (3) they are regarded as having such an impairment. 42 U.S.C. § 12102(1). The federal regulations provide that major life activities include: "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, [and] breathing...." 42 U.S.C.A. § 12102(2)(A). The Third Circuit has generally explained that, " 'major life activities' are those basic activities that the average person in the general population can perform with little or no difficulty." Marinelli v. City of Erie, 216 F.3d 354, 361 (3d Cir. 2000) (quoting 29 C.F.R. App. § 1630.2(i)(1999)).

In the instant matter, we find that the plaintiff does qualify as disabled for the purposes of the ADA. The plaintiff has sufficiently demonstrated that a knee replacement in 2007 and car accident in 2012 have significantly impacted the mobility of his knee joint, and have inhibited major life activities such as walking and standing. Plaintiff contends that for the last several years, as a result of his knee replacement, he has experienced difficulty climbing, walking, and driving for

lengthy periods of time. (Doc. 24-2, Dep. of Pl. at 80:12-16). He experiences pain in and around his kneecap, which is exacerbated by movement. (Id. at 98:12-16) Plaintiff's contention is supported by at least two notes during the course of his employment from his treating physician, Dr. Charlton, stating that plaintiff required certain accommodations due to his physical limitations resulting from his knee injuries. (Id. at 99-101). Thus, we find that the plaintiff has established the first element of his prima facie case.

## 2. Ability to Perform the Essential Functions of the Job With or Without Reasonable Accommodation

The plaintiff must next demonstrate that he can perform essential functions of his job with or without reasonable accommodations. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Defendant argues that plaintiff could not perform the essential functions of his job as an insurance adjuster because he is substantially restricted in his ability to travel to insured property sites and work in high, precarious places like roofs, which are critical to the career. Plaintiff counters with evidence that he can perform the essential functions of the job, so long as he is granted the accommodation of being assigned claims that require less than two hours of travelling per shift and limited ladder climbing of one hour per shift. Plaintiff has presented evidence that he had been allowed to work with

these accommodations since 2009,[4] thus he argues that the accommodations clearly were not unreasonable or an undue hardship for the company. (Doc. 24-2, Dep. of Pl. at 93-99). The defendant, in response, contests that such accommodations were made prior to at least 2011. Michael McKeon, the plaintiff's supervisor, testified at his deposition that he first became aware that the plaintiff needed a disability accommodation in either 2011 or 2012, after being notified by a client that the plaintiff did not get on the roof at the claim location. (Doc. 24-3, Dep. of Michael McKeown at 45:14-22).

Furthermore, the parties vehemently disagree as to whether there were assignments available that fell within the borders of plaintiff's restrictions, and whether those assignments were nevertheless assigned to other people. The defendant maintains that it could not accommodate the plaintiff due to a lack of available assignments, yet, according to the plaintiff, he was able to identify thirty-five claims that fell within his restrictions that were assigned to other workers. The defendant provided evidence to the court listing the disputed claims and accompanying Google Maps directions. (See Doc. 22-26, Ex. O, Spreadsheet of Claims with Google Maps Directions). However, the parties have different interpretations of these directions, as the majority of the claims require

---

[4] The defendant acquired the company that the plaintiff worked for in 2011. Plaintiff alleges that the accommodations continued after the acquisition.

travel times between forty-five minutes and one hour and fifteen minutes, depending on the route taken and the traffic conditions.

As such, we find that material questions of fact exist as to whether plaintiff could perform the essential functions of his job, and whether the accommodations that he requested were reasonable and would not create an undue hardship on the defendant. Summary judgment is thus inappropriate for the defendant on plaintiff's claim for disability discrimination.

### B. Failure to Accommodate

Plaintiff's next cause of action under the ADA is failure to accommodate a disability. Discrimination under the ADA includes failing to accommodate reasonably "the known physical or mental limitations of an otherwise qualified individual with a disability" unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation could include a part-time or modified work schedule. 42 U.S.C. § 1211(9).

The law provides that both employer and employee "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997). "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in the interactive process by

showing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." Williams v. Phila. Hous. Auth. Police Dept., 360 F.3d 751, 772 (3d Cir. 2004).

Here, while the parties dispute whether the plaintiff requested an accommodation for his disability in 2009, they agree that he did formally request accommodations at some point between August 28, 2012 and September 25, 2012. Further, the defendant agrees that it did not continue to accommodate the plaintiff's disability request, as it placed him on FMLA and short-term disability leaves on November 20, 2012.  The human resource director cited defendant's inability to accommodate plaintiff's medical restrictions as the reason for this placement. (Doc. 22-29, Ex. R, Jan. 20, 2014 Letter to Plaintiff). The plaintiff was ultimately terminated on January 30, 2014, following the expiration of his FMLA and short-term disability leaves.

Thus, the question once again becomes whether the accommodations requested by the plaintiff, a maximum of two hour travel time per shift and a maximum of one hour of ladder usage per shift, were reasonable. Relying on the

analysis used in the disposition of plaintiff's disability discrimination claim, we find that significant issues of material fact exist regarding this issue.

Moreover, even if the accommodations were reasonable, the defendant has presented evidence, which the plaintiff disputes, that accommodating the plaintiff would impose a financial hardship, as the total number of claims received by the defendant decreased by 38.7% from 2011 to 2012, and another 18.25% in 2013. (Doc. 22-28, Ex. Q, Def.'s Interrogatory Responses at 5). This decrease, according to the defendant, made accommodating the plaintiff unmanageable. As such, we will deny the defendant's motion for summary judgment on plaintiff's failure to accommodate claim.

### C. Retaliation

The plaintiff's final cause of action under the ADA is retaliation. A plaintiff may use the McDonnell Douglas burden-shifting framework discussed previously to establish an ADA retaliation claim. Williams, 360 F.3d at 760. Under this burden-shifting framework: (1) the plaintiff first bears the burden of establishing a prima facie case of retaliation; (2) the burden of production next shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action; and (3) the burden of production shifts back to the plaintiff to establish that the defendant's proffered reason is pretextual. Shellenberger v. Summit

Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003) (citing McDonnell Douglas Corp., 411 U.S. at 802-05).

Here, however, the defendant does not necessarily challenge plaintiff's prima facie case. Rather, the defendant argues that plaintiff's retaliation claim is merely a restatement of his failure to accommodate claim, and therefore it is duplicative and not actionable. After a close reading of plaintiff's complaint, we agree.

To establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. American Sterilizer Co.,126 F.3d 494, 500 (3d Cir. 1997). As previously discussed, plaintiff requested an accommodation for limited travel time and ladder usage based on his physical disability. The right to request an accommodation in good faith is a protected activity under the ADA. Shellenberger, 318 F.3d at 191. As such, there is no question that plaintiff engaged in a protected activity.  Whether a causal connection exists between plaintiff's request for accommodations and the defendant's adverse employment actions, however, is another matter.

The defendant admits that it placed the defendant on FMLA and short-term disability leaves relatively soon after plaintiff asked for accommodations. Its reason for doing so, according to the defendant, is because it could not continue with plaintiff's accommodations without undue hardship to the company. Further, the defendant acknowledges that it ultimately terminated the plaintiff's employment for the same reason, upon the expiration of his FMLA and short-term disability leaves. The plaintiff was advised before being placed on leave that his continued employment was not guaranteed, and that the plaintiff was to provide a medical update after each doctor visit indicating either a release to perform the essential functions of his position, or information describing updated functional limitations, so that a determination could be made regarding continuation of the temporary accommodation. (Doc. 22-13, Ex. G, Email Exchange Between Plaintiff and Human Resource Director at 4). We find no evidence of a "retaliatory" motive.

Thus, as we have discussed, the issue here is really whether the accommodations requested by the plaintiff were reasonable, and whether the defendant should have continued to make those accommodations. Although this claim is stated as a retaliation claim in form, we find that it is in substance just a reiteration of his failure to accommodate claim. See Garner v. School Dist. Of Phil., 63 F.Supp. 3d 483, 500 (E.D. Pa. 2014) (granting summary judgment on an

ADA retaliation claim, noting that where plaintiff predicates an ADA retaliation claim on the employer's denial of a request for accommodation, that claim is in substance a claim of failure to accommodate, and cannot be presented as a separate claim). Thus, we will grant summary judgment in favor of the defendant on plaintiff's ADA retaliation claim.

## II. AEDA Claims

We next address plaintiff's claims filed under the ADEA. Plaintiff alleges age discrimination and retaliation, arguing that the defendant discriminated against him on account of his age by assigning his former work to younger co-employees and thereafter terminating him. We start our analysis with a review of plaintiff's age discrimination claim.

### A. Age Discrimination

The defendant moves for summary judgment on plaintiff's age discrimination claim. Plaintiff counters that genuine issues of material fact preclude summary judgment. After a careful review, we agree with the plaintiff.

Plaintiff brings an age discrimination claim pursuant to the ADEA, which makes it unlawful for an employer "to discharge any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibition is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and

competence decline with old age." <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993). The ADEA therefore commands employers not to use age as a proxy for an employee's actual characteristics, but rather "to evaluate older employees on their merits." <u>Id.</u> at 611 (alteration and internal quotation marks omitted).

To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action. <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 177-78 (2009). A plaintiff can satisfy this burden in one of two ways. First, a plaintiff may demonstrate with direct evidence that age was the "but-for" cause of the employment action. <u>Anderson v. Consol. Rail Corp.</u>, 297 F.3d 242, 247-48 (3d Cir. 2002). Second, a plaintiff may use the familiar burden shifting framework announced in <u>McDonnell Douglas</u> to establish age discrimination with circumstantial evidence. <u>Smith v. City of Allentown</u>, 589 F.3d 684, 691 (3d Cir. 2009). Here, plaintiff argues that he can establish age discrimination under either method.

### 1. Direct Evidence

Initially, plaintiff claims that his supervisor's ageist remarks establish direct evidence of age discrimination. The law provides that a plaintiff seeking to demonstrate age discrimination with direct evidence faces a "high hurdle" and requires plaintiff's evidence "reveal a sufficient discriminatory animus" to render

any shift in the burden of production "unnecessary." <u>Anderson</u>, 297 F.3d at 248.

To satisfy this standard, a plaintiff must present "evidence of discriminatory

attitudes about age that were causally related to the decision to fire him."

<u>Glanzman v. Metro. Mgmt. Corp.</u>, 391 F.3d 506, 512 (3d Cir. 2004). Stated

differently, plaintiff's evidence would have to " 'lead not only to a ready logical

inference of bias, but also to a rational presumption that the person expressing

bias acted on it when he made the challenged employment decision." <u>Fakete v.

Aetna, Inc.</u>, 308 F.3d 335, 339 (3d Cir. 2002) (quoting <u>Starceski v. Westinghouse

Elec. Corp.</u>, 54 F.3d 1089, 1097 (3d Cir. 1995)); see also <u>Gross</u>, 557 U.S. at 177

(holding that "[a]n act or omission is not regarded as a cause of an event if the

particular event would have occurred without it.").

 In the instant matter, plaintiff asserts that his landlord, Robert Trusavage,

overheard plaintiff's supervisor, Michael McKeown, saying on the phone, in

reference to the plaintiff that: "he is near retirement and we should just get rid of

him anyway." (Doc. 24-8 at 2). Plaintiff argues that this is direct evidence that

McKeown was motivated by age animus. The defendant, in response, argues

that: 1) we cannot consider Trusavage's affidavit when deciding the instant

motion because the document is inappropriate evidence for summary judgment

purposes, and 2) even if the document could be considered, its contents are

irrelevant. After carefully considering Document 24-8, which plaintiff presents as

the "Affidavit of Robert Trusavage," we agree with the defendant that reliance on its contents is inappropriate at this stage in the proceedings.

Document 24-8 is a one page letter written by Robert Trusavage, informing the reader that on August 28, 2012, Trusavage was walking by an office rented by the defendant when he overheard the man closing the office talking on his cell phone. (Id.) Trusavage heard the man say, "I don't believe he is injured," and "he is near retirement and we should just get rid of him anyway." (Id.) The document was written and notarized nearly two months after this incident occurred, on October 25, 2012. (Id.) Although the contents and title suggest that the plaintiff submitted Document 24-8 as an affidavit, we agree with the defendant that such classification is not appropriate. While a formal affidavit, i.e. a sworn document, is not necessary under Federal Rule of Civil Procedure 56, even an unsworn declaration must still be subscribed in proper form as true under penalty of perjury. See 28 U.S.C. § 1746. Here, plaintiff's document contains nothing more than a notarial seal, and was neither sworn under penalty of perjury nor sworn to before a person authorized to administer oaths. As such, we will not consider Document 24-8 an affidavit or declaration for summary judgment purposes.

We further find that the contents of the document are not relevant to our analysis. See FED. R. EVID. 401 (evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence).

Document 24-8 purports to memorialize Trusavage's recollection of overhearing, two months prior, one side of a cell phone conversation. In this conversation, Trusavage heard "the man closing the office" state to an unidentified person on the other end of the cell phone that an unidentified third person "is near retirement and we should just get rid of him anyway." (Doc. 24-8 at 2). Nothing in this document indicates that it was McKeown, or anyone else associated with the defendant, who made the alleged statements, or that the statements made were in reference to the plaintiff. Because of the obvious unreliability of this document, we find that on this evidence alone, the plaintiff has not pointed to sufficient direct evidence to establish evidence of age discrimination.

### 2. Circumstantial Evidence

Plaintiff also asserts that he can establish age discrimination with circumstantial evidence. The Third Circuit Court of Appeals has approved the use of the familiar burden shifting framework announced in McDonnell Douglas when a plaintiff relies on circumstantial evidence. Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). Satisfying the prima facie elements creates an "inference of unlawful discrimination." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995). The

elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

Once the plaintiff establishes this prima facie case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was pretext for age discrimination." Smith, 589 F.3d at 689-90. We begin our analysis under this burden shifting framework with the plaintiff's prima facie case.

### a. Plaintiff's prima facie case

As noted above, the plaintiff contends that the defendant discriminated against him on account of his age by assigning claims that he could have handled to younger co-employees and thereafter terminating his employment. The defendant agrees that based on the undisputed facts, the plaintiff meets the first two elements of his prima facie case, that is, the defendant acknowledges that the plaintiff was approximately sixty years old at the time, and that ultimately

claims were assigned to younger employees as opposed to the plaintiff. The defendant argues, however, that the work was only given to these employees because those claims fell outside of the plaintiff's restrictions. For that reason, according to the defendant, the plaintiff was not qualified for the position in which he worked, and there is no evidence suggesting an inference of discrimination, refuting the third and fourth elements.

In looking at the third element of plaintiff's prima facie case, we once again revert to our discussion on whether the plaintiff was in fact qualified for the position in which he worked. As previously noted, a dispute exists between the parties regarding whether the plaintiff had worked in the same capacity, with the same accommodations, for several years prior to his termination. Additionally, as we have already explained above, a dispute exists as to whether the claims that were given to other employees, who were younger than the plaintiff, were available within the plaintiff's modified travel radius. Thus, we find that genuine questions of material fact exist as to whether plaintiff met the qualifications for his job as a claims adjuster.

With respect to the final element of plaintiff's prima facie case, we find that the plaintiff has met his burden of showing that he was ultimately replaced by at least one other sufficiently younger employee so as to support an inference of a discriminatory motive. Here, the plaintiff has presented evidence that he was

replaced by two significantly younger employees—first, by Allen Fosmire Jr., who is under forty years old, and second, by Jeffrey Horvath, who is under fifty years old. (Doc. 24-5, Pl.'s Affidavit ¶¶ 14, 15). "[T]o satisfy the sufficiently younger standard, 'there is no particular age difference that must be shown, but ... courts have held ... that a five year difference can be sufficient [while] ... a one year difference cannot.' " Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 307 (3d Cir. 2004) (citing Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999)). The age differences shown here, of at least twenty and ten years, are sufficient for establishing a prima facie case. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that when a 56–year old employee was replaced by a 40–year old employee, this qualified as someone "substantially younger" for the purposes of establishing a prima facie case).

Thus, because we conclude that, based on the evidence, a jury may find that the plaintiff has demonstrated a prima facie case of age discrimination, we continue our analysis with the next stage of the McDonnell Douglas framework.

### b. Defendant's nondiscriminatory explanation

Next, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." Smith, 589 F.3d at 689–90. This burden is " 'relatively light' " and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took

the adverse employment action for a non-discriminatory reason. <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 706 (3d Cir. 2006) (quoting <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994)); <u>see</u> <u>also</u> <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

Here, the defendant asserts that plaintiff's employment was terminated because the defendant could not continue to accommodate plaintiff's permanent light duty work restrictions without undue hardship. Therefore, the undisputed record evidence establishes a legitimate, non-discriminatory reason for plaintiff's termination.

### c. Pretext

Having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." <u>Burton</u>, 707 F.3d at 426; <u>see</u> <u>also</u> <u>Doe v. C.A.R.S. Prot. Plus, Inc.</u>, 527 F.3d at 364 (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

To establish pretext, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 764. The first <u>Fuentes</u> prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Id.</u> at 765 (citation and internal quotation marks omitted). In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off. He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." <u>Tomasso</u>, 445 F.3d at 706 (internal citation and quotation marks omitted); <u>see also</u> <u>Keller</u>, 130 F.3d at 1109 (explaining that a plaintiff must demonstrate that the employer's proffered reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason").

In the instant case, plaintiff has demonstrated three areas of inconsistencies and contradictions regarding defendant's nondiscriminatory reasons for termination. First, plaintiff explained that the defendant had been accommodating the same restrictions that suddenly imposed an undue burden on defendant's company for several years prior to plaintiff's termination. (Doc.

24-2, Dep. of Pl. at 93-99). When viewed in the light most favorable to the plaintiff, this practice might imply that such accommodations were not truly an undue hardship, rather an inconvenience for the company to continue to accommodate an older employee when it could replace him with younger employees who would not need such accommodations.

Second, defendant's nondiscriminatory reason for plaintiff's termination changed during the pendency of this action. Prior to plaintiff's termination, the defendant stated that it could not continue to accommodate his medical restrictions. It was for this reason, that the defendant allegedly placed the plaintiff on FMLA and short term disability leaves. Subsequently, however, plaintiff's supervisor, Michael McKeown, stated that plaintiff's claim assignments were reduced due to plaintiff's low production percentages. According to the McKeown, he participated in a discussion with his own supervisor about terminating the plaintiff's employment because the company was "losing money on him based on his production." (Doc. 24-3, Dep. McKeown at 121:8-11).

Moreover, plaintiff has presented evidence of inconsistences concerning who in authority decided to place the plaintiff on leave. Plaintiff's supervisor contends that he was not consulted on the decision, while the defendant's human resource director provided documents revealing that it was actually plaintiff's supervisor who initiated the imposition of the leave by means of a personnel

action notice. Therefore, a reasonable jury could conclude that defendant's inconsistent and contradictory reasons for plaintiff's termination are merely pretextual for terminating plaintiff and transferring his job duties to younger employees.

Finally, the plaintiff has pointed to evidence suggesting that in the two months prior to the plaintiff being placed on FMLA and short term disability leaves, thirty-three losses which fell within plaintiff's restrictions were assigned to other, younger adjusters. The defendant does not dispute that the majority of these claims were in fact reassigned to other adjusters, but as previously discussed in detail above, the parties dispute whether the defendant had a legitimate non-discriminatory reasons to do so.

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that the defendant wanted to fire plaintiff because of his age, took affirmative steps to facilitate plaintiff's termination and covered it up in the guise of inability to accommodate his restrictions. As such, the plaintiff has pointed to evidence in the record that could cause a reasonable jury to disbelieve the defendant's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason. Burton, 707 F.3d at 430 (citation omitted).  Accordingly, defendant's motion for summary judgment regarding plaintiff's age discrimination claim will be denied.

## B. Retaliation

Plaintiff's final cause of action under the ADEA is a retaliation claim. Plaintiff has indicated that he now wishes to withdraw this claim. (Doc. 23, Pl.'s Br. in Opp'n. at 7). As such, Count V, retaliation in violation of the ADEA will be dismissed.

## III. PHRA

Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts ..."). Thus, PHRA violations are subject to the same analysis as ADA and ADEA claims, and no separate analysis is required. Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). We will therefore deny the defendant's summary judgment on plaintiff's PHRA disability discrimination claim and PHRA age discrimination claim. We will grant summary judgment on Count VIII, plaintiff's PHRA retaliation claim.

Plaintiff has indicated that he wishes to withdraw Count X, which is an additional PHRA retaliation claim. As such, Count X, retaliation in violation of the PHRA will be dismissed.

**Conclusion**

For the foregoing reasons, we will deny summary judgment on Count I, plaintiff's ADA disability discrimination claim; Count II, plaintiff's ADA failure to accommodate claim; Count IV, plaintiff's ADEA age discrimination claim; Count VI, plaintiff's PHRA disability discrimination claim; Count VII, plaintiff's PHRA failure to accommodate claim; and Count IX, plaintiff's PHRA age discrimination claim.

We will grant summary judgment on Count III, plaintiff's ADA retaliation claim and Count VIII, plaintiff's PHRA retaliation claim.

We will dismiss Count V and Count X, retaliation claims under the ADEA and PHRA.

An appropriate order will follow.

**BY THE COURT:**

**Date: July 13, 2018**          **s/ James M. Munley_____**
                                 **JUDGE JAMES M. MUNLEY**
                                 **United States District Court**